**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-50455 (RBK) |
| SPECTRUM JUNGLE LABS | ) |
| CORPORATION, <u>et</u> <u>al.</u>, | ) *Chapter 11* |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**[FIRST PROPOSED] JOINT PLAN OF REORGANIZATION
OF SPECTRUM JUNGLE LABS CORPORATION, ET AL., DEBTORS**

William B. Kingman (Texas Bar No. 11476200)
LAW OFFICES OF WILLIAM B. KINGMAN, P.C.
4040 Broadway, Suite 450
San Antonio, Texas  78209
Telephone: 210-829-1199
Email: bkingman@kingmanlaw.com

Harry A. Perrin (Texas Bar No. 15796800)
VINSON & ELKINS LLP
First City Tower, 1001 Fannin Street, Suite 2500
Houston, Texas  77002
Telephone: 713-758-2222; Fax: 713-615-5016
Email: hperrin@velaw.com

D. J. Baker (Texas Bar No. 01566500)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036-6522
Telephone: 212-735-3000; Fax: 212-735-2000
Email: dj.baker@skadden.com
Proposed Counsel for Debtors and Debtors in Possession

**THE DISCLOSURE STATEMENT WITH RESPECT TO THIS JOINT PLAN OF REORGANIZATION HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THE DEBTORS WILL SEPARATELY NOTICE A HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE STATEMENT UNDER SECTION 1125 OF THE BANKRUPTCY CODE.  THE DEBTORS RESERVE THE RIGHT TO MODIFY OR SUPPLEMENT THIS JOINT PLAN OF REORGANIZATION AND THE ACCOMPANYING DISCLOSURE STATEMENT PRIOR TO AND UP TO THE DATE OF SUCH HEARING.**

# TABLE OF CONTENTS

**ARTICLE I RULES OF CONSTRUCTION AND DEFINITIONS**................................................................1

1.1          Rules of Construction.................................................................................................1
1.2          Definitions..................................................................................................................2

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS**...........................................................9

2.1          Introduction................................................................................................................9
2.2          Unclassified Claims....................................................................................................9
2.3          Unimpaired Classes of Claims and Interests..............................................................9
2.4          Impaired Voting Class of Claims ...............................................................................9
2.5          Impaired Non-Voting Classes of Claims and Interests............................................10

**ARTICLE III TREATMENT OF CLAIMS AND INTERESTS**...............................................................10

3.1          Unclassified Claims..................................................................................................10
3.2          Unimpaired Classes of Claims and Interests............................................................11
3.3          Impaired Voting Class of Claims .............................................................................12
3.4          Impaired Nonvoting Classes of Claims and Interests...............................................13
3.5          Reservation of Rights Regarding Claims .................................................................13

**ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN**.........................................................13

4.1          Impaired Classes of Claims and Interests Entitled to Vote .....................................13
4.2          Acceptance by an Impaired Class .............................................................................13
4.3          Presumed Acceptances by Unimpaired Classes .......................................................13
4.4          Classes Deemed to Reject Plan ................................................................................13
4.5          Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code........................13

**ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN**.......................................................14

5.1          Continued Corporate Existence ................................................................................14
5.2          Certificates of Incorporation and By-laws ...............................................................14
5.3          Exit Funding..............................................................................................................14
5.4          Cancellation of Old Securities and Agreements.......................................................14
5.5          Authorization and Issuance of the New Securities ...................................................14
5.6          New Equity Incentive Plan; Further Participation in Incentive Plans ......................15
5.7          Directors and Officers of Reorganized Debtors .......................................................15
5.8          Revesting of Assets...................................................................................................16
5.9          Restructuring Transactions........................................................................................16
5.10         Indemnification of Debtors' Directors, Officers, and Employees.............................16
5.11         Preservation of Rights of Action; Resulting Claim Treatment.................................16
5.12         Effectuating Documents; Further Transactions........................................................16
5.13         Exemption From Certain Transfer Taxes .................................................................17
5.14         Corporate Action ......................................................................................................17
5.15         Plan Supplement .......................................................................................................17
5.16         Rights of Negotiating Noteholders ...........................................................................17

**ARTICLE VI TREATMENT OF CONTRACTS AND LEASES**............................................................17

6.1          Assumed Contracts and Leases ................................................................................17
6.2          Payments Related to Assumption of Contracts and Leases......................................18
6.3          Rejected Contracts and Leases .................................................................................18

6.4      Compensation and Benefit Programs .................................................................................. 18
6.5      Certain Indemnification Obligations ................................................................................. 19
6.6      Extension of Time to Assume or Reject.............................................................................. 19
6.7      Claims Arising from Assumption or Rejection .................................................................. 19

**ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS** ............................................................. **19**

7.1      Distributions for Claims Allowed as of Effective Date...................................................... 19
7.2      Distribution to Holders of Allowed Claims ...................................................................... 19
7.3      Calculation of Distribution Amounts of New Common Stock............................................ 20
7.4      Application of Distribution Record Date ........................................................................... 20
7.5      Withholding and Reporting Requirements ......................................................................... 20
7.6      Setoffs ................................................................................................................................ 21
7.7      Prepayment......................................................................................................................... 21
7.8      Allocation of Distributions................................................................................................ 21

**ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**....**21**

8.1      Conditions to Confirmation................................................................................................ 21
8.2      Conditions to Effective Date .............................................................................................. 21
8.3      Waiver of Conditions ......................................................................................................... 22

**ARTICLE IX RETENTION OF JURISDICTION** ................................................................................. **22**

9.1      Scope of Retention of Jurisdiction .................................................................................... 22
9.2      Failure of the Bankruptcy Court to Exercise Jurisdiction ................................................. 23

**ARTICLE X MISCELLANEOUS PROVISIONS**................................................................................... **24**

10.1      Professional Fee Claims and Substantial Contribution Claims .......................................... 24
10.2      Fees and Expenses of Negotiating Noteholders and Indenture Trustee Expenses ............ 24
10.3      Dissolution of Creditors Committee................................................................................... 24
10.4      Payment of Statutory Fees.................................................................................................. 24
10.5      Successors and Assigns and Binding Effect....................................................................... 24
10.6      Compromises and Settlements ........................................................................................... 24
10.7      Releases and Satisfaction of Subordination Rights............................................................ 25
10.8      Releases by Debtors ........................................................................................................... 25
10.9      Discharge of the Debtors.................................................................................................... 25
10.10      Injunction .......................................................................................................................... 26
10.11      Exculpation and Limitation of Liability ............................................................................ 26
10.12      Term of Injunctions or Stays ............................................................................................. 27
10.13      Modifications and Amendments ........................................................................................ 27
10.14      Severability of Plan Provisions ......................................................................................... 27
10.15      Revocation, Withdrawal, or Non-Consummation............................................................. 27
10.16      Notices ............................................................................................................................... 28
10.17      Computation of Time ......................................................................................................... 29

**FIRST PROPOSED JOINT PLAN OF REORGANIZATION OF**
**SPECTRUM JUNGLE LABS CORPORATION, ET AL., DEBTORS**

**INTRODUCTION**

Spectrum Jungle Labs Corporation, Spectrum Brands, Inc., ROVCAL, Inc., ROV Holding, Inc., Tetra Holding (US), Inc., United Industries Corporation, Schultz Company, Spectrum Neptune US Holdco Corporation, United Pet Group, Inc., DB Online, LLC, Aquaria, Inc., Perfecto Manufacturing, Inc., Aquarium Systems, Inc. and Southern California Foam, Inc. hereby propose this joint plan of reorganization for the resolution of their outstanding Claims (as defined herein) and Interests (as defined herein).  Reference is made to the Disclosure Statement (as defined herein) distributed contemporaneously herewith for a discussion of the Debtors' (as defined herein) history, businesses, properties, results of operations, projections for future operations and risk factors, and a summary and analysis of the Plan (as defined herein) and certain related matters, including distributions to be made under the Plan.  The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code (as defined herein).

All holders of Claims who are entitled to vote on the Plan are encouraged to read each of the Plan and the Disclosure Statement in its entirety before voting to accept or reject the Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein), and Article X of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

**ARTICLE I**

**RULES OF CONSTRUCTION AND DEFINITIONS**

**1.1**    *Rules of Construction*

(a)    For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in Section 1.2 of the Plan.  Any capitalized term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

(b)    Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

(c)    Any reference in the Plan to (i) a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and (ii) an existing document, exhibit, or other agreement means such document, exhibit or other agreement as it may be amended, modified, or supplemented from time to time.

(d)    Unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan.

(e)    The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

(f)    Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

(g)    The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.2**    *Definitions*

(a)    "**ABL Credit Facility**" means the credit facilities provided under the (a) Existing Credit Agreement; and (b) the other "Loan Documents" as defined therein.

(b)    "**ABL Facility Claim**" means any Claim arising or existing under or related to the ABL Credit Facility.

(c)    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (i) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors, including, without limitation, wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (ii) Professional Fee Claims, (iii) Substantial Contribution Claims, (iv) all fees and charges assessed against the Estates under Section 1930 of Title 28 of the United States Code, (v) Cure payments for contracts and leases that are assumed under Section 365 of the Bankruptcy Code, and (vi) the DIP Facility Claim.

(d)    "**Allowed**" means a Claim (i) that is a Filed Claim and as to which either (x) no objection to its allowance has been timely filed or (y) any objection to its allowance has been settled or withdrawn by the Debtors or has been denied by a Final Order, (ii) that is not Disputed by the Debtors, (iii) that has been Disputed by the Debtors but has been settled, determined, resolved or adjudicated, as the case may be, in the procedural manner in which such Claim would have been settled, determined, resolved or adjudicated if the Chapter 11 Case had not been commenced; (iv) that has been expressly allowed in the Plan; or (v) that has been permitted to be adjudicated before the Bankruptcy Court and is allowed by a Final Order; *provided*, *however*, that all Allowed Claims shall remain subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510.

(e)    "**Allowed Rejection Damages Claim Amount**" means an amount no greater than the amount calculated in accordance with Section 502(b)(6) of the Bankruptcy Code.

(f)    "**Avenue**" means Avenue International Master L.P., Avenue Investments, L.P., Avenue Special Situations Fund V, L.P., Avenue Special Situations Fund IV, L.P., and Avenue-CDP Global Opportunities Fund, L.P.

(g)    "**Bankruptcy Code**" means Sections 101 et seq., of title 11 of the United States Code, as now in effect or hereafter amended.

(h)    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Texas or such other court as may have jurisdiction over the Chapter 11 Case or any aspect thereof.

(i)    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

(j)    "**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Rule 9006(a) of the Bankruptcy Rules), on which commercial banks are open for business in New York, New York.

(k)    "**Cash**" means legal tender of the United States or equivalents thereof.

(l)    "**Chapter 11 Case**" means the jointly administered Chapter 11 cases of the Debtors.

(m)    "**Claim**" means (i) the right to payment against any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (ii) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(n)    "**Class**" means a category of holders of Claims or Interests, as described in Article II of the Plan.

(o)    "**Confirmation**" means confirmation of the Plan by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code.

(p)    "**Confirmation Date**" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

(q)    "**Confirmation Hearing**" means the hearing to consider Confirmation of the Plan under Section 1128 of the Bankruptcy Code.

(r)    "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan.

(s)    "**Creditor**" means any Person who holds a Claim against any of the Debtors.

(t)    "**Creditors Committee**" means any official committee of unsecured creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Case, as reconstituted from time to time.

(u)    "**Cure**" means, with respect to the assumption of a contract or lease pursuant to Section 365(b) of the Bankruptcy Code, (i) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under a contract or lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law, or (ii) the taking of such other actions as may be agreed upon by the parties or ordered by the Bankruptcy Court.

(v)    "**Debtor(s)**" means, individually or collectively as the context requires, and including in their capacity as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Spectrum Jungle Labs Corporation, Spectrum Brands, Inc., ROVCAL, Inc., ROV Holding, Inc., Tetra Holding (US), Inc., United Industries Corporation, Schultz Company, Spectrum Neptune US Holdco Corporation, United Pet Group, Inc., DB Online, LLC, Aquaria, Inc., Perfecto Manufacturing, Inc., Aquarium Systems, Inc. or Southern California Foam, Inc. and collectively, Spectrum Jungle Labs Corporation, Spectrum Brands, Inc., ROVCAL, Inc., ROV Holding, Inc., Tetra Holding (US), Inc., United Industries Corporation, Schultz Company, Spectrum Neptune US Holdco Corporation, United Pet Group, Inc., DB Online, LLC, Aquaria, Inc., Perfecto Manufacturing, Inc., Aquarium Systems, Inc. and Southern California Foam, Inc.

(w)    "**D.E. Shaw**" means D.E. Shaw Laminar Portfolios, L.L.C.

(x)    "**DIP Facility**" means the postpetition debtor-in-possession credit facilities provided under the (i) Existing Credit Agreement as amended by the Ratification and Amendment Agreement dated February 3, 2009 among Spectrum as borrower, the Subsidiary Debtors as guarantors, Wachovia Bank, N.A., in its capacity as Administrative and Collateral Agent ,and the other parties thereto; and (ii) related loan and security documents.

(y)    "**DIP Facility Agent**" means Wachovia Bank, National Association, as agent for itself and the other DIP Facility Lenders.

(z)    "**DIP Facility Claims**" means the Claims existing under the DIP Facility.

(aa)    "**DIP Facility Lenders**" means the lenders and the participants under the DIP Facility.

(bb)    "**Disbursing Agent**" means Reorganized Spectrum or any other Person designated by the Debtors in their sole discretion on or before the Effective Date to serve as disbursing agent under the Plan, or, with respect to the Noteholder Claims, the Indenture Trustee or such other Person as the Indenture Trustee designates.

(cc)    "**Disclosure Statement**" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, that is reasonably satisfactory to each of the Negotiating Noteholders, and that is prepared, approved and distributed in accordance with Section 1125 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules.

(dd)    "**Disputed**" means, with respect to a Claim, (i) if a Proof of Claim bar date for such Claim has been established pursuant to a Final Order, (x) a Claim as to which a Proof of Claim is not timely filed, (y) a Filed

Claim as to which the time period set for the Debtors to file an objection to such Claim has not expired, or (z) a Filed Claim as to which the Debtors have timely filed an Objection but the Claim has not been settled by the Debtors or determined, resolved, or adjudicated by Final Order; (ii) if a Proof of Claim bar date has not been established for such Claim, a Claim as to which (x) the Debtors dispute their liability in any manner that would have been available to them had the Chapter 11 Case not been commenced, and (y) the liability of the Debtors has not been settled by the Debtors or determined, resolved, or adjudicated by final, nonappealable order of a court or other tribunal of competent jurisdiction; (iii) that has been expressly disputed in the Plan; or (iv) that has been permitted to be adjudicated before the Bankruptcy Court and has not been allowed by a Final Order.

(ee)  "**Distribution Date**" means, (i) for any Claim that is an Allowed Claim on the Effective Date, (x) for any portion that was due prior to the Effective Date on or as soon as practicable after the Effective Date but not later than the first (1st) Business Day that is twenty (20) days after the Effective Date or (y) for any portion that is due after the Effective Date, at such time as such portion becomes due in the ordinary course of business and/or in accordance with its terms; (ii) for any Claim that is not an Allowed Claim on the Effective Date, the later of (a) the date on which the Debtors become legally obligated to pay such Claim; and (b) the date on which the Claim becomes an Allowed Claim; *provided*, *however*, that a later date may be established by order of the Bankruptcy Court upon motion of the Debtors, the Reorganized Debtors, or any other party.

(ff)  "**Distribution Record Date**" means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Noteholder Claims, which date shall be the date and time immediately prior to the Distribution Date.

(gg)  "**Effective Date**" means the Business Day upon which all conditions to the consummation of the Plan as set forth in Section 8.2 of the Plan have been satisfied or waived as provided in Section 8.3 of the Plan, and is the date on which the Plan becomes effective.

(hh)  "**Employee Programs**" means all of the Debtors' employee-related programs, plans, policies, and agreements, including, without limitation, (i) all health and welfare plans, pension plans within the meaning of Title IV of the Employee Retirement Income Security Act of 1974, as amended, (ii) all retiree programs subject to Sections 1114 and 1129(a)(13) of the Bankruptcy Code, (iii) all employment, retention, incentive, severance, compensation, and other similar agreements, and (iv) all other employee compensation, benefit, and reimbursement programs, plans, policies, and agreements, but excluding any equity incentive plans, equity ownership plans, or any equity-based plans of any kind of the Debtors.

(ii)  "**Estate(s)**" means, individually, the estate of each Debtor in the Chapter 11 Case and, collectively, the estates of all Debtors in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

(jj)  "**Existing Credit Agreement**" means the Credit Agreement dated as of September 28, 2007 among, among others, Spectrum as Borrower, the Subsidiary Debtors as Guarantors, Wachovia Bank, National Association, as the Administrative Agent, the Collateral Agent and an LC Issuer, Goldman Sachs Credit Partners L.P., as the Syndication Agent, and certain Lenders as named therein.

(kk)  "**Exit Facility**" means the credit facilities provided under that certain credit agreement (and any related documents, agreements, and instruments) to be entered into by the Reorganized Debtors as of the Effective Date as a condition to consummation of the Plan, having terms substantially in accordance with the term sheet included in the Plan Supplement, and subject to the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, to provide a portion of the funds necessary to make payments required to be made on the Effective Date, as well as funds for working capital and other general corporate purposes after the Effective Date.

(ll)  "**Filed Claim**" means a Claim for which a Proof of Claim bar date has been established pursuant to a Final Order and a Proof of Claim has been timely filed with the Bankruptcy Court.

(mm)  "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, or the docket of any such other court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any

revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

(nn)    "**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an ABL Facility Claim, a Term Facility Claim, an Other Secured Claim, an Intercompany Claim, a Noteholder Claim, or a Subordinated Claim.  This definition specifically includes, without limitation, Rejection Damages Claims.

(oo)    "**Harbinger**" means, collectively, Harbinger Capital Partners Master Fund I, LTD. and Harbinger Capital Partners Special Situations Fund, L.P.

(pp)    "**Impaired**" means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of Section 1124 of the Bankruptcy Code.

(qq)    "**Indemnification Obligation**" means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to by-laws, articles or certificates of incorporation, contracts, or otherwise.

(rr)    "**Indentures**" means, collectively, (i) that certain Indenture dated as of September 30, 2003, among Spectrum, the guarantors named therein and U.S. Bank National Association, as trustee, which Indenture governs all obligations arising under or in connection with the 8-1/2% Senior Subordinated Notes due 2013; (ii) that certain Indenture dated as of February 7, 2005, among Spectrum, the guarantors named therein, and U.S. Bank National Association, as trustee, which Indenture governs all obligations arising under or in connection with the 7-3/8% Senior Subordinated Notes due 2015; and (iii) that certain Indenture dated as of March 30, 2007, among Spectrum, the guarantors named therein and U.S. Bank National Association, as trustee (as successor to Wells Fargo Bank, N.A.), which Indenture governs all obligations arising under or in connection with the Variable Rate Toggle Senior Subordinated Notes due 2013.

(ss)    "**Indenture Trustee**" means U.S. Bank National Association, or its successor, in any case in its capacity as an indenture trustee for the Spectrum Notes.

(tt)    "**Indenture Trustee Expenses**" means any reasonable, unpaid fees of the Indenture Trustee, and reasonable, unpaid out-of-pocket costs and expenses, including reasonable fees and expenses of counsel, incurred by the Indenture Trustee through the Effective Date, except any such costs and expenses as may be attributable to the Indenture Trustee's negligence or willful misconduct.

(uu)    "**Intercompany Claim**" means any Claim arising prior to the Petition Date against any of the Debtors by another Debtor.  The term does not include Claims against any of the Debtors by a non-Debtor subsidiary or affiliate of a Debtor, which Claims shall be treated as General Unsecured Claims.

(vv)    "**Interest**" means the legal, equitable, contractual, or other rights of any Person (i) with respect to Spectrum Interests, (ii) with respect to Subsidiary Interests, or (iii) to acquire or receive either of the foregoing.

(ww)    "**Lease Rejection Motion**" means any motion filed by the Debtors in the Bankruptcy Court wherein the Debtors seek to reject certain of their leases of nonresidential real property.

(xx)    "**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

(yy)    "**Litigation Rights**" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, which are to be retained by the Reorganized Debtors pursuant to Section 5.11 of the Plan, including, without limitation, claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code.

(zz)    "**Negotiating Noteholders**" means each of  Harbinger, Avenue, and D.E. Shaw.

(aaa)    "**New Board**" means the Board of Directors of Reorganized Spectrum.

(bbb)    "**New Common Stock**" means the new common shares of Reorganized Spectrum, to be authorized and/or issued under Section 5.5 of the Plan, with terms substantially as set forth in the New Spectrum Governing Documents to be included in the Plan Supplement.

(ccc)    "**New Equity Incentive Plan**" means the new equity incentive plan to be adopted by the New Board pursuant to Section 5.6 of the Plan.

(ddd)    "**New Indenture**" means the indenture under which Reorganized Spectrum will issue the New Notes.

(eee)    "**New Notes**" means a new series of senior subordinated toggle notes issued by Reorganized Spectrum under the New Indenture, with the Reorganized Subsidiaries as guarantors and an indenture trustee to be determined, all as more specifically described in Exhibit A hereto.

(fff)    "**New Securities**" means, collectively, the New Common Stock and the New Notes.

(ggg)    "**New Spectrum By-laws**" means the by-laws of Reorganized Spectrum.

(hhh)    "**New Spectrum Charter**" means the Certificate of Incorporation of Reorganized Spectrum.

(iii)    "**New Spectrum Governing Documents**" means the New Spectrum Charter, the New Spectrum By-laws, and any other governing corporate document with respect to Reorganized Spectrum.

(jjj)    "**Noteholder**" means any holder of a Spectrum Note.

(kkk)    "**Noteholder Claim**" means any Claim arising or existing under or related to the Spectrum Notes, other than any Indenture Trustee Expenses.

(lll)    "**Old Securities**" mean, collectively, the Spectrum Interests, the Spectrum Notes, and any other note, bond, or indenture evidencing or creating any public indebtedness or obligation of any Debtor.

(mmm)   "**Other Priority Claim**" means a Claim against any of the Debtors entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

(nnn)    "**Other Secured Claim**" means a Secured Claim arising prior to the Petition Date against any of the Debtors, other than an ABL Facility Claim or a Term Facility Claim.

(ooo)    "**Person**" means any person, individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

(ppp)    "**Petition Date**" means February 3, 2009, the date on which the Debtors filed their petitions for relief commencing the cases that are being administered as the Chapter 11 Case.

(qqq)    "**Plan**" means this joint plan of reorganization under Chapter 11 of the Bankruptcy Code and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

(rrr)    "**Plan Supplement**" means the supplement to the Plan containing, without limitation, the term sheet for the Exit Facility, the forms of the New Spectrum Governing Documents, the announcement of the New Board, the New Equity Incentive Plan, and the Shareholders Agreement.

(sss)    "**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

(ttt) "**Professional**" means any professional employed by the Debtors or a creditors committee in the Chapter 11 Case by order of the Bankruptcy Court, excluding any of the Debtors' ordinary course professionals.

(uuu) "**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

(vvv) "**Pro Rata**" means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless the Plan provides otherwise.

(www) "**Proof of Claim**" means a Proof of Claim filed with the Bankruptcy Court in connection with the Chapter 11 Case.

(xxx) "**Reinstated**" means (i) leaving unaltered the legal, equitable, and contractual rights to which the holder of a Claim or Interest is entitled so as to leave such Claim unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (A) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code, or of a kind that Section 365(b)(2) expressly does not require to be cured, (B) reinstating the maturity of such Claim or Interest as such maturity existed before such default, (C) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, (D) if such Claim or Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to Section 365(b)(1)(A) of the Bankruptcy Code, compensating the holder of such Claim or Interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure, and (E) not otherwise altering the legal, equitable, or contractual rights to which the holder of such Claim or Interest is entitled; *provided*, *however*, that any Claim that is Reinstated under the Plan shall be subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510.

(yyy) "**Rejection Damages Claim**" means a Claim arising from the Debtors' rejection of a contract or lease, which Claim is subject to the terms and conditions set forth in this Plan.

(zzz) "**Reorganized Debtor(s)**" means, individually, any reorganized Debtor or its successor and, collectively, all reorganized Debtors and their successors, on or after the Effective Date.

(aaaa) "**Reorganized Spectrum**" means reorganized Spectrum and its successor, on and after the Effective Date.

(bbbb) "**Reorganized Subsidiary**" means, individually, a reorganized Subsidiary Debtor or its successor and, collectively, both reorganized Subsidiary Debtors or their successors, on or after the Effective Date.

(cccc) "**Reorganized Subsidiary Governing Documents**" means certificates of incorporation, by-laws, articles of organization, operating agreements, or any other governing corporate document with respect to a Reorganized Subsidiary, as amended pursuant to the Plan or the Plan Supplement.

(dddd) "**Secured Claim**" means a Claim (i) that is secured by a Lien on property in which an Estate has an interest, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of setoff; (ii) to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which is agreed upon in writing by the Debtors or the Reorganized Debtors and the holder of such Claim or determined, resolved, or adjudicated by final, nonappealable order of a court or other tribunal of competent jurisdiction.

(eeee) "**Shareholders Agreement**" means the shareholders agreement to be entered into with holders of the New Common Stock in connection with the issuance of the New Common Stock, which shareholders agreement shall cover inspection rights, information rights (including annual audited and quarterly unaudited

financial statements), registration rights with respect to the New Common Stock, preemptive rights, and such other provisions as agreed to by the Debtors and each of the Negotiating Noteholders.

(ffff)    "**Spectrum**" means Spectrum Brands, Inc., a Wisconsin corporation, which is the parent company of the Subsidiary Debtors and which, along with the Subsidiary Debtors, is a Debtor in the Chapter 11 Case.

(gggg)    "**Spectrum Interest**" means, collectively, all equity interests in Spectrum outstanding prior to the Effective Date, including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of Spectrum, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in Spectrum prior to the Effective Date.

(hhhh)    "**Spectrum Notes**" means, collectively, the (i) 8-1/2% Senior Subordinated Notes due 2013; (ii) 7-3/8% Senior Subordinated Notes due 2015; and (iii) Variable Rate Toggle Senior Subordinated Notes due 2013, all of which were issued by Spectrum and guaranteed by all or some combination of the Subsidiary Debtors.

(iiii)    "**Subordinated Claim**" means any Claim against any of the Debtors that is subordinated pursuant to either Section 510(b) or 510(c) of the Bankruptcy Code, which shall include any Claim arising from the rescission of a purchase or sale of any Old Security, any Claim for damages arising from the purchase or sale of an Old Security, or any Claim for reimbursement, contribution, or indemnification on account of any such Claim.

(jjjj)    "**Subsidiary Debtors**" means, collectively, Spectrum Jungle Labs Corporation, ROVCAL, Inc., ROV Holding, Inc., Tetra Holding (US), Inc., United Industries Corporation, Schultz Company, Spectrum Neptune US Holdco Corporation, United Pet Group, Inc., DB Online, LLC, Aquaria, Inc., Southern California Foam, Inc., Perfecto Manufacturing, Inc., and Aquarium Systems, Inc., each of which is a Debtor in the Chapter 11 Case.

(kkkk)    "**Subsidiary Interest**" means, collectively, all of the issued and outstanding shares of stock or membership interests of the Subsidiary Debtors, existing prior to the Effective Date, which stock and interests are owned, directly or indirectly, by Spectrum.

(llll)    "**Substantial Contribution Claim**" means a claim for compensation or reimbursement of costs and expenses relating to services rendered in making a substantial contribution in the Chapter 11 Case pursuant to Sections 503(b)(3), (4), or (5) of the Bankruptcy Code.

(mmmm)    "**Term Facility Claim**" means any Claim arising or existing under or related to the Term Facility Loan Documents.

(nnnn)    "**Term Facility Loan Documents**" means, collectively, the (a) Credit Agreement dated as of March 30, 2007, among, among others,  Spectrum as the Borrower, the Subsidiary Debtors as Guarantors, Goldman Sachs Credit Partners, L.P., as the Administrative Agent, the Collateral Agent and the Syndication Agent, Wachovia Bank, National Association, as the Deposit Agent, Bank of America N.A. as an LC Issuer and the Lenders as described therein; and (b) the other "Loan Documents" as defined therein.

(oooo)    "**Unimpaired**" means, with respect to any Claim, that such Claim is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

(pppp)    "**Voting Deadline**" means the deadline established by the Bankruptcy Court by which the holders of Claims in Classes that are entitled to vote on the Plan must submit the ballot indicating each such holder's vote on the Plan.

(qqqq)    "**Voting Record Date**" means the date established by the Bankruptcy Court for determining the holders of Claims entitled to vote on the Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1**    *Introduction*

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

**2.2**    *Unclassified Claims*

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

**2.3**    *Unimpaired Classes of Claims and Interests*

The following Classes contain Claims and Interests that are not Impaired by the Plan, are deemed to accept the Plan, and are not entitled to vote on the Plan.

*Class 1:   Other Priority Claims*

Class 1 consists of all Other Priority Claims.

*Class 2:  ABL Facility Claim*

Class 2 consists of the ABL Facility Claim.

*Class 3:  Term Facility Claims*

Class 3 consists of the Term Facility Claims.

*Class 4:   Other Secured Claims*

Class 4 consists of all Other Secured Claims.

*Class 5:  General Unsecured Claims*

Class 5 consists of all General Unsecured Claims.

*Class 6: Intercompany Claims*

Class 6 consists of all Intercompany Claims.

*Class 7:  Subsidiary Interests*

Class 7 consists of all Subsidiary Interests.

**2.4**    *Impaired Voting Class of Claims*

The following Class contains Claims that are Impaired by the Plan and are entitled to vote on the Plan.

*Class 8:  Noteholder Claims*

Class 8 consists of all Noteholder Claims.

**2.5**    *Impaired Non-Voting Classes of Claims and Interests*

The following Classes contain Claims and Interests that are Impaired by the Plan, are not receiving any distribution under the Plan, are deemed to reject the Plan, and are not entitled to vote on the Plan.

*Class 9:  Subordinated Claims*

Class 9 consists of all Subordinated Claims.

*Class 10:  Spectrum Interests*

Class 10 consists of all Spectrum Interests.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**3.1**    *Unclassified Claims*

(a)    **Administrative Claims**

With respect to each Allowed Administrative Claim, except as otherwise provided for in Section 10.1 of the Plan, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between a Debtor and the holder of such Administrative Claim, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which the applicable Debtor and such holder shall have agreed upon in writing, subject to the approval of each of the Negotiating Noteholders, which approval shall not be unreasonably withheld; *provided*, *however*, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

The DIP Facility Claims shall be deemed Allowed in their entirety for all purposes of the Plan and the Chapter 11 Case.  The holders of the Allowed DIP Facility Claims shall receive, on the later of the Effective Date or the date on which such DIP Facility Claims become payable pursuant to any agreement between the Debtors and the holders of such DIP Facility Claims, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed DIP Facility Claims, (i) such treatment as required under the DIP Facility, including, without limitation, the issuance of shares of New Common Stock; or (ii) such different treatment as to which the Debtors and such holders shall have agreed upon in writing; *provided*, *however*, that in respect of any letters of credit issued and undrawn under the DIP Facility, unless the issuing bank is a lender under the Exit Facility and permits such letters of credit to be rolled over and treated as letters of credit issued under the Exit Facility, the Debtors shall be required to either, with the consent of such issuing bank: (A) cash collateralize such letters of credit in an amount equal to [   ]% of the undrawn amount of any such letters of credit, (B) return any such letters of credit to the issuing bank undrawn and marked "cancelled," or (C) provide a "back-to-back" letter of credit to the issuing bank in a form and issued by an institution reasonably satisfactory to such issuing bank, in an amount equal to [   ]% of the then undrawn amount of such letters of credit.

(b)    **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Debtors with the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with Section 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such different treatment as to which the applicable Debtor and such holder have agreed upon in writing.

**3.2**     *Unimpaired Classes of Claims and Interests*

(a)     **Class 1:  Other Priority Claims**

On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (iii) the date on which such Allowed Other Priority Claim becomes payable pursuant to any agreement between a Debtor and the holder of such Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, either (A) Cash equal to the unpaid portion of such Allowed Other Priority Claim or (B) such different treatment as to which the applicable Debtor and such holder shall have agreed upon in writing.

(b)     **Class 2:  ABL Facility Claim**

The ABL Facility Claims are hereby Allowed in the amount determined pursuant to the terms of the ABL Credit Facility and shall not be subject to defense, avoidance, recharacterization, disgorgement, subordination, setoff, recoupment, or other contest (whether legal or equitable), for all purposes of the Plan and the Chapter 11 Case.

The holders of the Allowed ABL Facility Claims shall receive, on the later of the Effective Date or the date on which such ABL Facility Claims becomes payable pursuant to any agreement between the Debtors and the holders of such ABL Facility Claims, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed ABL Facility Claims, (i) Cash equal to the full amount of such Allowed ABL Facility Claim remaining as of the Effective Date, or (ii) such different treatment as to which the Debtors and such holders shall have agreed upon in writing; *provided*, *however*, that in respect of any letters of credit issued and undrawn under the ABL Credit Facility, unless the issuing bank is a lender under the Exit Facility and permits such letters of credit to be rolled over and treated as letters of credit issued under the Exit Facility, the Debtors shall be required to either, with the consent of such issuing bank: (A) cash collateralize such letters of credit in an amount equal to [    ]% of the undrawn amount of any such letters of credit, (B) return any such letters of credit to the issuing bank undrawn and marked "cancelled", or (C) provide a "back-to-back" letter of credit to the issuing bank in a form and issued by an institution reasonably satisfactory to such issuing bank, in an amount equal to [    ]% of the then undrawn amount of such letters of credit.

(c)     **Class 3:  Term Facility Claims**

The Term Facility Claims are hereby Allowed in the amount determined pursuant to the terms of the Term Facility Loan Documents and shall not be subject to defense, avoidance, recharacterization, disgorgement, subordination, setoff, recoupment, or other contest (whether legal or equitable), for all purposes of the Plan and the Chapter 11 Case.  Each holder of a Term Facility Claim as of the Effective Date shall continue to hold its Pro Rata share of the Term Facility Claims after the Effective Date in accordance with the Term Loan Documents.

The Allowed Term Facility Claims shall be Reinstated.

Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code or this Plan, all Liens on property of the Debtor held with respect to the Term Facility Claims shall survive confirmation of the Plan and the occurrence of the Effective Date and continue in full force and effect in accordance with the terms of the Term Facility Loan Documents.

All principal, non-default interest, fees, expenses, costs, charges or other amounts due and payable under the Term Facility Loan Documents that was not paid by the Debtors prior to or during the Chapter 11 Case shall be paid in immediately available funds on the Effective Date in accordance with the Term Facility Loan Documents, and any principal, non-default interest, fee, expense, cost, charge or other amount that accrued during the Chapter 11 Case but is not payable until after the Effective Date shall be paid as and when due in accordance with the Term Facility Loan Documents as if the Chapter 11 Case had not been filed.  Any principal, interest, fee, expense, cost, charge or other amount due after the Effective Date shall be made in accordance with the terms and conditions of the Term Facility Loan Documents.

(d)        **Class 4:  Other Secured Claims**

On the Effective Date, the legal, equitable, and contractual rights of each holder of an Other Secured Claim shall be Reinstated.  On, or as soon as reasonably practicable after, the Distribution Date, each holder of an Allowed Other Secured Claim shall receive, in full satisfaction, settlement of and in exchange for, such Allowed Other Secured Claim, such payment on such terms as would otherwise apply to such Claim had the Chapter 11 Case not been filed.

Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of any Debtor held with respect to an Allowed Other Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Allowed Other Secured Claim until such Allowed Other Secured Claim is satisfied, at which time such Liens shall be released, shall be deemed null and void, and shall be unenforceable for all purposes.  Nothing in the Plan shall preclude the Debtors or the Reorganized Debtors from challenging the validity of any alleged Lien on any asset of a Debtor or the value of the property that secures any alleged Lien.

(e)        **Class 5:  General Unsecured Claims**

The legal, equitable and contractual rights of each holder of a General Unsecured Claims shall be unimpaired.  On, or as soon as reasonably practicable after, the Distribution Date, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement of and in exchange for, such Allowed General Unsecured Claim, such payment on such terms as would otherwise apply to such Claim had the Chapter 11 Case not been filed, without post-petition interest; *provided however*, that each Rejection Damages Claim shall be limited to the Allowed Rejection Damages Claim Amount.

(f)        **Class 6:  Intercompany Claims**

At the election of the Reorganized Debtors and the holders of each Intercompany Claim, with the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, either (i) the legal, equitable and contractual rights of each holder of an Intercompany Claim shall be Reinstated; or (ii) such Claim shall be adjusted, continued, or capitalized, either directly or indirectly or in whole or part, and no such disposition shall require stockholder consent.

(g)        **Class 7:  Subsidiary Interests**

For the deemed benefit of the holders of the New Common Stock, Spectrum shall retain its Subsidiary Interests, subject to any applicable restrictions arising under the Exit Facility.

**3.3        *Impaired Voting Class of Claims***

(a)        **Class 8: Noteholder Claims**

The Noteholder Claims are hereby Allowed in the amount of $1,090,381,816, which amount includes principal and accrued interest as of the Petition Date and shall not be subject to defense, avoidance, recharacterization, disgorgement, subordination, setoff, recoupment, or other contest (whether legal or equitable), for all purposes of the Plan and the Chapter 11 Case.

Subject to the terms and conditions of Section 5.5 of the Plan, each holder of an Allowed Noteholder Claim shall receive, on the Effective Date and in full satisfaction, settlement, release, discharge of, in exchange for, and on account of such Allowed Noteholder Claim, its Pro Rata share of (i) [   ] shares of the New Common Stock; and (ii) $218,076,363 in principal amount of the New Notes, which amount represents 20% of the Allowed Noteholder Claims.

**3.4**　　*Impaired Nonvoting Classes of Claims and Interests*

(a)　　**Class 9:  Subordinated Claims**

The holders of Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.  All Subordinated Claims shall be discharged as of the Effective Date.

(b)　　**Class 10:  Spectrum Interests**

All Spectrum Interests of any kind, including, without limitation, stock options or any warrants or other agreements to acquire the same (whether or not arising under or in connection with any employment agreement), shall be cancelled as of the Effective Date and the holders thereof shall not receive or retain any property under the Plan on account of such Interests.

**3.5**　　*Reservation of Rights Regarding Claims*

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**4.1**　　*Impaired Classes of Claims and Interests Entitled to Vote*

Holders of Claims in the Impaired Voting Class of Claims are entitled to vote as a Class to accept or reject the Plan.  Accordingly, the votes of holders of Claims in Class 8 shall be solicited with respect to the Plan.  A vote of a holder of a Claim in Class 8 is deemed to be a vote with respect to each of the Debtors.

**4.2**　　*Acceptance by an Impaired Class*

In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**4.3**　　*Presumed Acceptances by Unimpaired Classes*

Claims in Classes 1, 2, 3, 4, 5, 6, and 7 are Unimpaired under the Plan.  Under Section 1126(f) of the Bankruptcy Code, holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such Unimpaired Claim holders shall not be solicited.

**4.4**　　*Classes Deemed to Reject Plan*

Holders of Claims and Interests in Classes 9 and 10 are not entitled to receive or retain any property under the Plan.  Under Section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

**4.5**　　*Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

In view of the deemed rejection of the Plan by Classes 9 and 10, the Debtors request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, or modify the Plan, the Plan Supplement, or any exhibit, in accordance with the provisions of this Plan, including, without limitation, Section 10.13, as necessary to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1**    *Continued Corporate Existence*

The Reorganized Debtors shall continue to exist after the Effective Date as separate legal entities, in accordance with the applicable laws in the respective jurisdictions in which they are incorporated and pursuant to the New Spectrum Governing Documents in the case of Reorganized Spectrum, and pursuant to the Reorganized Subsidiary Governing Documents in the case of the Reorganized Subsidiaries.

**5.2**    *Certificates of Incorporation and By-laws*

The certificate or articles of incorporation, by-laws, articles of organization, or operating agreement, as applicable, of each Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code; and, as amended, shall constitute the New Spectrum Governing Documents and the Reorganized Subsidiary Governing Documents.  The New Spectrum Governing Documents shall be subject to the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, and in substantially the forms of such documents included in the Plan Supplement.

**5.3**    *Exit Funding*

On the Effective Date, the Exit Facility, together with new promissory notes and guarantees, if any, evidencing obligations of the Reorganized Debtors thereunder, and all other documents, instruments, and agreements to be entered into, delivered, or confirmed thereunder on the Effective Date, shall become effective.  The new promissory notes issued pursuant to the Exit Facility and all obligations under the Exit Facility and related documents shall be paid as set forth in the Exit Facility and related documents.

**5.4**    *Cancellation of Old Securities and Agreements*

(a)        On the Effective Date, except as otherwise provided for herein, (i) the Old Securities shall be deemed extinguished, cancelled and of no further force or effect, and (ii) the obligations of the Debtors (and the Reorganized Debtors) under any agreements, indentures, or certificates of designations governing the Old Securities and any other note, bond, or indenture evidencing or creating any indebtedness or obligation of any Debtor with respect to the Old Securities shall be discharged in each case without further act or action under any applicable agreement, law, regulation, order, or rule and without any action on the part of the Bankruptcy Court or any Person; *provided*, *however*, that the Spectrum Notes and the Indentures shall continue in effect solely for the purposes of (x) allowing the holders of the Spectrum Notes to receive the distributions provided for Noteholder Claims hereunder, (y) allowing the Disbursing Agent to make distributions on account of the Noteholder Claims, and (z) preserving the rights of the Indenture Trustee with respect to the Indenture Trustee Expenses, including, without limitation, any indemnification rights provided by the Indentures.

(b)        Subsequent to the performance by the Indenture Trustee or its agents of any duties that are required under this Plan, the Confirmation Order and/or under the terms of the Indentures, the Indenture Trustee and its agents shall be relieved of, and released from, all obligations associated with the Spectrum Notes arising under the Indentures or under other applicable agreements or law and the Indentures shall be deemed to be discharged.

**5.5**    *Authorization and Issuance of the New Securities*

(a)        Reorganized Spectrum shall (i) provide for authorized capital on the Effective Date equal to [  ] shares of New Common Stock; (ii) issue on the Effective Date up to an aggregate amount of [  ] of New Common Stock for distribution in accordance with the terms of the DIP Facility; (iii) issue on the Effective Date up to an aggregate of [  ] shares of New Common Stock for distribution to holders of Allowed Noteholder Claims; and (iv) reserve for issuance the number of shares of New Common Stock necessary (excluding shares that may be issuable as a result of the antidilution provisions thereof) to satisfy the required distributions of stock options, stock

appreciation rights, restricted stock, and other forms of equity-based awards granted under the New Equity Incentive Plan (excluding shares that may be issuable as a result of the antidilution provisions).

(b)        The New Common Stock issued under the Plan shall be subject to dilution based upon (i) the issuance of New Common Stock pursuant to the New Equity Incentive Plan as set forth in Section 5.6 of the Plan, and (ii) any other shares of New Common Stock issued post-emergence.

(c)        The issuance and distribution of the New Common Stock pursuant to the Plan to holders of Allowed Noteholder Claims shall be authorized under Section 1145 of the Bankruptcy Code as of the Effective Date without further act or action by any Person, except as may be required by the New Spectrum Governing Documents or applicable law, regulation, order or rule; and all documents evidencing same shall be executed and delivered as provided for in the Plan or the Plan Supplement.

(d)        As of the Effective Date, upon the filing of the necessary certifications with the Securities and Exchange Commission, it is intended that Reorganized Spectrum shall not be a "public" company and shall not be subject to periodic filing requirements pursuant to the Securities Exchange Act of 1934. The rights of the holders of New Common Stock shall be as provided for in the New Spectrum Governing Documents, and the Shareholders Agreement, which shall include restrictions on transfer of the New Common Stock.

(e)        On the Effective Date, Reorganized Spectrum shall authorize the New Notes in the aggregate principal amount of $218,076,363, which amount represents 20% of the Allowed Noteholder Claims. The New Notes shall have the principal terms and conditions summarized on Exhibit A hereto.

(f)        Spectrum shall file with the Securities and Exchange Commission a "shelf" registration statement pursuant to Rule 415 covering the New Securities issued to the Noteholders in respect of the Noteholder Claims on or prior to the Effective Date of the Plan. Reorganized Spectrum shall use commercially reasonable efforts to cause the shelf registration statement to be declared effective by the Securities and Exchange Commission as promptly as reasonably practicable.

**5.6    *New Equity Incentive Plan; Further Participation in Incentive Plans***

(a)        On the Effective Date, Reorganized Spectrum shall be authorized and directed to establish and implement the New Equity Incentive Plan on the Effective Date for up to [    ] of the total amount of New Common Stock issued on the Effective Date. Awards granted thereunder may be in the form of stock options, stock appreciation rights, restricted stock, and other forms of equity-based awards. The New Equity Incentive Plan shall be promulgated by the New Board for the benefit of such members of management, employees, and directors of the Reorganized Debtors and any of Reorganized Spectrum's subsidiaries as are designated by the New Board, or a committee designated by the New Board, in its sole and absolute discretion, on such terms as to timing of issuance, manner and timing of vesting, duration, individual entitlement and all other terms, as such terms are determined by the New Board in its sole and absolute discretion. The New Equity Incentive Plan may be amended or modified from time to time by the New Board. No members of management, employees, or directors of Reorganized Spectrum and its subsidiaries who are entitled to receive awards pursuant to the New Equity Incentive Plan shall be obligated to participate in such plan.

(b)        Any pre-existing understandings, either oral or written, between the Debtors and any member of management, any employee, or any other Person as to entitlement to (i) any pre-existing equity or equity-based awards or (ii) participate in any pre-existing equity incentive plan, equity ownership plan or any other equity-based plan shall be null and void as of the Effective Date and shall not be binding on Reorganized Spectrum on or following the Effective Date. All decisions as to entitlement to participate after the Effective Date in any equity or equity-based plans shall be within the sole and absolute discretion of the New Board or a committee designated by the New Board.

**5.7    *Directors and Officers of Reorganized Debtors***

(a)        The New Board shall consist of individuals identified by the Debtors and the Negotiating Noteholders and announced in the Plan Supplement. The election of the New Board shall be approved by

Spectrum's current board of directors and the Bankruptcy Court.  Thereafter, the New Board shall be elected in accordance with the New Spectrum Governing Documents.

(b)      The officers of Spectrum shall continue to serve in their same respective capacities after the Effective Date for Reorganized Spectrum.

(c)      The existing directors and officers of the Subsidiary Debtors shall continue to serve in their same respective capacities after the Effective Date for the Reorganized Subsidiaries until replaced or removed in accordance with the Reorganized Subsidiary Governing Documents.

**5.8      *Revesting of Assets***

Except as otherwise provided herein, the property of each Debtor's Estate, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtor on the Effective Date.  Thereafter, each Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court.  Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of each Reorganized Debtor shall be free and clear of all Claims and Interests.

**5.9      *Restructuring Transactions***

On, as of, or after the Effective Date, with the consent of its Board of Directors, each of the Reorganized Debtors may enter into such transactions and may take such actions as may be necessary or appropriate, in accordance with any applicable state law, to effect a corporate or operational restructuring of their respective businesses, to otherwise simplify the overall corporate or operational structure of the Reorganized Debtors, to achieve corporate or operational efficiencies, or to otherwise improve financial results; *provided*, *however*, that such transactions or actions are not otherwise inconsistent with the Plan, the distributions to be made under the Plan, or the Exit Facility.  Such transactions or actions may include such mergers, consolidations, restructurings, dispositions, liquidations, closures, or dissolutions, as may be determined by the Reorganized Debtors to be necessary or appropriate.

**5.10      *Indemnification of Debtors' Directors, Officers, and Employees***

Upon the Effective Date, the New Spectrum Governing Documents and the Reorganized Subsidiary Governing Documents shall contain provisions which, to the fullest extent permitted by applicable law, (i) eliminate the personal liability of the Debtors' directors, officers, and key employees serving before, on, and after the Petition Date and the Reorganized Debtors' directors, officers, and key employees serving on and after the Effective Date for monetary damages; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify those of the Debtors' directors, officers, and key employees serving prior to, on, or after the Effective Date for all claims and actions, including, without limitation, for pre-Effective Date acts and occurrences.

**5.11      *Preservation of Rights of Action; Resulting Claim Treatment***

Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Supplement, and in accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date, each Debtor or Reorganized Debtor shall retain all of their respective Litigation Rights that such Debtor or Reorganized Debtor may hold against any Person.  Each Debtor or Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all such Litigation Rights.

**5.12      *Effectuating Documents; Further Transactions***

Any chief executive officer, president, chief financial officer, general counsel or any other appropriate officer of Reorganized Spectrum, or of any applicable Reorganized Subsidiary, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms

and conditions of the Plan.  Any secretary or assistant secretary of Reorganized Spectrum, or any applicable Reorganized Subsidiary, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

**5.13**     *Exemption From Certain Transfer Taxes*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or any other Person pursuant to the Plan in the United States, including any Liens granted by a Debtor or a Reorganized Debtor to secure the Exit Facility, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, sales or use tax, or other similar tax.  Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement.

**5.14**     *Corporate Action*

On the Effective Date, the adoption and filing of the New Spectrum Governing Documents and all actions contemplated by the Plan shall be authorized and approved in all respects pursuant to this Plan.  All matters provided for herein involving the corporate structure of the Debtors or Reorganized Debtors, and any corporate action required by the Debtors or Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders of the Debtors or Reorganized Debtors.  On the Effective Date, the appropriate chief executive officer, president, chief financial officer, general counsel, or any other appropriate officer or director of the Reorganized Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors without the need for any required approvals, authorizations, or consents except for express consents required under this Plan.

**5.15**     *Plan Supplement*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the date of the commencement of the Confirmation Hearing.  Upon such filing, all documents included in the Plan Supplement may be inspected via the Bankruptcy Court's electronic filing system or at http://www.loganandco.com.  Holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request to the Debtors in accordance with Section 10.16 of the Plan.

**5.16**     *Rights of Negotiating Noteholders*

Whenever the Plan requires the consent or approval of the Negotiating Noteholders, or grants the Negotiating Noteholders a right to be satisfied, the Negotiating Noteholders having such rights of consent, approval or satisfaction shall be determined, and such rights shall be construed, as set forth in that certain Restructuring Support Agreement (as amended from time to time in accordance with the terms thereunder) entered into by and among the Negotiating Noteholders and the Debtors.

**ARTICLE VI**

**TREATMENT OF CONTRACTS AND LEASES**

**6.1**     *Assumed Contracts and Leases*

(a)          Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Supplement, as of the Effective Date, (i) any contract or lease to which a Debtor is a party as of the Petition Date shall be deemed to be and treated as though it is an executory contract or unexpired lease, as applicable, subject to Section 365 of the Bankruptcy Code; and (ii) each Debtor shall be deemed to have assumed such contracts and leases to which it is a party unless such contract or lease (x) was previously assumed or rejected upon motion by a Final Order, including, without limitation, the Final Order entered granting any Lease Rejection Motion, (y) previously expired or terminated pursuant to its own terms, or (z) is the subject of any pending motion, including to assume, to assume on modified terms, to reject or to make any other disposition filed by a Debtor on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365(a) of the Bankruptcy Code approving the contract and lease assumptions described above, as of the Effective Date.

(b)     Each contract and lease that is assumed shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such contract or lease and (ii) all contracts or leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

**6.2     *Payments Related to Assumption of Contracts and Leases***

Any monetary amounts by which each contract and lease to be assumed pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code by Cure.  If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of any Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption; *provided*, *however*, that the Reorganized Debtors shall be authorized to reject any contract or lease to the extent the Reorganized Debtors, in the exercise of their sound business judgment, conclude that the amount of the Cure obligation as determined by such Final Order, renders assumption of such contract or lease unfavorable to the Reorganized Debtors.  In the event the Reorganized Debtors so reject any previously assumed contract or lease, and such rejection gives rise to a Rejection Damages Claim, such Rejection Damages Claim arising out of such rejection shall be limited to the Allowed Rejection Damage Claim Amount.

**6.3     *Rejected Contracts and Leases***

The Debtors reserve the right, at any time prior to the Effective Date, except as otherwise specifically provided herein, and with the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, to seek to reject any contract or lease to which any Debtor is a party and to file a motion requesting authorization for the rejection of any such contract or lease.  Any contracts or leases that expire by their terms prior to the Effective Date are deemed to be rejected, unless previously assumed or otherwise disposed of by the Debtors.

**6.4     *Compensation and Benefit Programs***

(a)     Except to the extent (i) otherwise provided for in the Plan, (ii) previously assumed or rejected by an order of the Bankruptcy Court entered on or before the Confirmation Date, (iii) the subject of a pending motion to reject filed by a Debtor on or before the Confirmation Date, or (iv) previously terminated, all Employee Programs in effect before the Effective Date, shall be deemed to be, and shall be treated as though they are, contracts that are assumed under the Plan.  Nothing contained herein shall be deemed to modify the existing terms of Employee Programs, including, without limitation, the Debtors' and the Reorganized Debtors' rights of termination and amendment thereunder.

(b)     To the extent any change of control provision contained in any Employee Program would be triggered solely as a result of the transactions contemplated by the Plan, such Employee Program shall not be assumed to the extent a waiver of the change of control provision is not executed by the employee having the benefit of such change of control provision, but otherwise shall remain in full force and effect and may be triggered as a result of any transactions occurring after the Effective Date.

(c)     As of the Effective Date, any and all equity incentive plans, equity ownership plans, or any other equity-based plans entered into before the Effective Date, including Claims arising from any change of control provision therein, shall be deemed to be, and shall be treated as though they are, contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan pursuant to the Confirmation Order.  Any Claims resulting from such rejection shall constitute Subordinated Claims and shall be treated in accordance with Section 3.4(a) of the Plan.  For the avoidance of doubt, in no event shall this Section 6.4(c) be held to impair any Employee Program.

**6.5**     *Certain Indemnification Obligations*

(a)     Indemnification Obligations owed to those of the Debtors' directors, officers, and employees serving prior to, on, and after the Petition Date shall be deemed to be, and shall be treated as though they are, contracts that are assumed pursuant to Section 365 of the Bankruptcy Code under the Plan, and such Indemnification Obligations (subject to any defenses thereto) shall survive the Effective Date of the Plan and remain unaffected by the Plan, irrespective of whether obligations are owed in connection with a pre-Petition Date or post-Petition Date occurrence.

(b)     Indemnification Obligations owed to any Professionals pursuant to Sections 327 or 328 of the Bankruptcy Code and order of the Bankruptcy Court, whether such Indemnification Obligations relate to the period before or after the Petition Date, shall be deemed to be, and shall be treated as though they are, contracts that are assumed pursuant to Section 365 of the Bankruptcy Code under the Plan.

**6.6**     *Extension of Time to Assume or Reject*

Notwithstanding anything set forth in Article VI of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed assumption provided for in Section 6.1(a) of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Reorganized Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

**6.7**     *Claims Arising from Assumption or Rejection*

(a)     Except as otherwise provided in the Plan or by Final Order of the Bankruptcy Court, all (i) Allowed Claims arising from the assumption of any contract or lease shall be treated as Administrative Claims pursuant to Section 3.1(a) of this Plan; and (ii) Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to and in accordance with the terms of Section 3.2(e) of this Plan.

(b)     If the rejection by a Debtor, pursuant to the Plan or otherwise, of a contract or lease results in a Rejection Damages Claim, then such Rejection Damages Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor or the properties of any of them unless a Proof of Claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Reorganized Debtors and counsel to each of the Negotiating Noteholders on the later of (i) thirty (30) days after entry of the order authorizing the rejection of such contract or lease and (ii) fifteen (15) days after the date designated as the rejection date in the order authorizing the rejection of such contract or lease.  The Debtors reserve their rights to object to any Rejection Damages Claim.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1**     *Distributions for Claims Allowed as of Effective Date*

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all distributions to holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date.  The Reorganized Debtors shall have the right, in their discretion, to accelerate any Distribution Date occurring after the Effective Date if the facts and circumstances so warrant.

**7.2**     *Distribution to Holders of Allowed Claims*

(a)     Except with respect to the Noteholder Claims and unless otherwise agreed to between the Debtors and the holder of an Allowed Claim, the Debtors shall make distributions to the holders of the Allowed Claims in the same manner and to the same addresses as such payments are made in the ordinary course of the Debtors' businesses.

(b)        No distributions shall be made on Disputed Claims until and unless such Disputed Claims become Allowed Claims.

(c)        No reserve shall be required with respect to any Disputed Claim.

(d)        On the Effective Date, distributions to holders of Allowed Noteholder Claims shall be delivered to the Indenture Trustee or, if directed by the Indenture Trustee, shall be delivered to the Disbursing Agent for distribution to the holders.

(e)        On or before the Effective Date, the Debtors shall, with the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, designate the Person (whether Reorganized Spectrum or an independent third party) to serve as the Disbursing Agent under the Plan on mutually agreeable terms and conditions.  If the Disbursing Agent is an independent third party designated to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out of pocket expenses incurred in connection with such services from Reorganized Spectrum.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**7.3        *Calculation of Distribution Amounts of New Common Stock***

No fractional shares of New Common Stock shall be issued or distributed under the Plan.  Each Person entitled to receive New Common Stock shall receive the total number of whole shares of New Common Stock to which such Person is entitled.  Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of shares of  New Common Stock, the actual distribution of shares of such stock shall be rounded to the next higher or lower whole number as follows: (a) fractions one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number.  Notwithstanding the foregoing, whenever rounding to the next lower whole number would result in such Person receiving zero shares of New Common Stock, such Person shall receive one (1) share of New Common Stock.  If two or more Persons are entitled to equal fractional entitlements and the aggregate amount of New Common Stock that would otherwise be issued to such Persons with respect to such fractional entitlements as a result of such rounding exceeds the number of whole shares which remain to be allocated, the Disbursing Agent shall allocate the remaining whole shares to such holders by random lot or such other impartial method as the Disbursing Agent deems fair.  Upon the allocation of all of the whole shares authorized under the Plan, all remaining fractional portions of the entitlements shall be cancelled and shall be of no further force and effect.  The Disbursing Agent shall have the right to carry forward to subsequent distributions any applicable credits or debits arising from the rounding described in this paragraph.

**7.4        *Application of Distribution Record Date***

At the close of business on the Distribution Record Date, the transfer ledgers for the Spectrum Notes shall be closed, and there shall be no further changes in the record holders of such Spectrum Notes.  The Reorganized Debtors, the Disbursing Agent, the Indenture Trustee, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Spectrum Notes occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

**7.5        *Withholding and Reporting Requirements***

In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no

distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such withholding tax obligations. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Indenture Trustee or the Disbursing Agent, as the case may be, until such time as the Disbursing Agent is satisfied with the holder's arrangements for any withholding tax obligations.

**7.6**     *Setoffs*

The Reorganized Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder.

**7.7**     *Prepayment*

Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith, or the Confirmation Order, the Reorganized Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; *provided*, *however*, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**7.8**     *Allocation of Distributions*

All distributions received under the Plan by holders of Claims shall be deemed to be allocated first to the principal amount of such Claim as determined for United States federal income tax purposes and then to accrued interest, if any, with respect to such Claim.

**ARTICLE VIII**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**8.1**     *Conditions to Confirmation*

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 8.3 of the Plan:

(a)     an order, in form and substance reasonably satisfactory to each of the Negotiating Noteholders, finding that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code shall have been entered; and

(b)     the proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors, each of the Negotiating Noteholders, and the agent for the lenders under the Exit Facility.

**8.2**     *Conditions to Effective Date*

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Section 8.3 of the Plan:

(a)     the Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Debtors, each of the Negotiating Noteholders, and the agent for the lenders under the Exit Facility, and shall, among other things:

(i)     provide that the Debtors and the Reorganized Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(ii)    approve the Exit Facility in form and substance reasonably satisfactory to each of the Negotiating Noteholders;

(iii)    authorize the issuance of the New Securities; and

(iv)    provide that, notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan;

(b)    the Confirmation Order shall not then be stayed, vacated, or reversed;

(c)    the New Spectrum Governing Documents, the Reorganized Subsidiary Governing Documents, the Exit Facility, and the Shareholders Agreement, shall be in form and substance reasonably satisfactory to the Debtors, each of the Negotiating Noteholders, and the agent for the lenders under the Exit Facility, and, to the extent any of such documents contemplates execution by one or more persons, any such document shall have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived;

(d)    the Reorganized Debtors shall have arranged for credit availability under the Exit Facility in amount, form, and substance reasonably satisfactory to the Debtors, each of the Negotiating Noteholders, and the agent for the lenders under the Exit Facility;

(e)    all material authorizations, consents, and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained; and

(f)    all material actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

**8.3    *Waiver of Conditions***

Each of the conditions set forth in Sections 8.1 and 8.2, with the express exception of the conditions contained in Section 8.1(a) and Sections 8.2(a)(i), (ii), and (iii), and (b), may be waived in whole or in part by the Debtors without any notice to parties in interest or the Bankruptcy Court and without a hearing, *provided*, *however*, that such waiver shall not be effective without the consent of each of the Negotiating Noteholders, which consent shall not be unreasonably withheld, and the agent for the lenders under the Exit Facility.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

**9.1    *Scope of Retention of Jurisdiction***

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)    with respect to Filed Claims or to the extent necessary with respect to other Claims, allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)    hear and determine all applications for Professional Fees and Substantial Contribution Claims; *provided*, *however*, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)　　　　hear and determine all matters with respect to contracts or leases or the assumption or rejection of any contracts or leases to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary and without limitation, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)　　　　effectuate performance of and payments under the provisions of the Plan;

(e)　　　　hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Litigation Rights;

(f)　　　　enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)　　　　hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including, without limitation, disputes arising under agreements, documents, or instruments executed in connection with the Plan, *provided, however*, that any dispute arising under or in connection with the New Securities, the Exit Facility, or the Term Facility Loan Documents shall be dealt with in accordance with the provisions of the applicable document;

(h)　　　　consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)　　　　issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)　　　　enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)　　　　hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(l)　　　　enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(m)　　　　except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(n)　　　　hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(o)　　　　hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p)　　　　hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)　　　　enter a final decree closing the Chapter 11 Case.

**9.2**　　　*Failure of the Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Section 9.1 of the Plan, the provisions of this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

**10.1** ***Professional Fee Claims and Substantial Contribution Claims***

All final requests for payment of Professional Fee Claims and Substantial Contribution Claims must be filed and served on the Reorganized Debtors, their counsel, and other necessary parties in interest no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to such requests for payment must be filed and served on the Reorganized Debtors, their counsel, and the requesting Professional or other entity no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

**10.2** ***Fees and Expenses of Negotiating Noteholders and Indenture Trustee Expenses***

(a)  On the Effective Date, to the extent that each of the following professionals have not been compensated pursuant to the DIP Facility, the Reorganized Debtors shall reimburse the Negotiating Noteholders the reasonable fees and expenses of each of (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP and Oppenheimer, Blend, Harrison &Tate, Inc., counsel to Harbinger; (ii) Bracewell & Giuliani LLP, counsel to D.E. Shaw; (iii) O'Melveny & Myers LLP, counsel to Avenue; and (iv) Lazard Freres & Co., financial advisor to Harbinger; without the need for any of the Negotiating Noteholders to file an application or otherwise seek Bankruptcy Court approval for the payment of such professional fees and expenses.

(b)  On the Effective Date, the Reorganized Debtors shall pay the Indenture Trustee Expenses without the need for the Indenture Trustee to file an application or otherwise seek Bankruptcy Court approval for the payment of the Indenture Trustee Expenses.

**10.3** ***Dissolution of Creditors Committee***

If appointed in the Chapter 11 Case, a creditors committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Section 1103 of the Bankruptcy Code.  On the Effective Date, the creditors committee shall be dissolved, the creditors committee's members shall be deemed released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Case or this Plan and its implementation, and the retention or employment of the creditors committee's attorneys, accountants, professionals, and other agents shall terminate, except with respect to (a) all Professional Fee Claims, (b) Substantial Contribution Claims, and (c) any appeals of the Confirmation Order.

**10.4** ***Payment of Statutory Fees***

All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the Reorganized Debtors.  The obligation of each of the Reorganized Debtors to pay quarterly fees to the Office of the United States Trustee pursuant to Section 1930 of Title 28 of the United States Code shall continue until such time as a particular Chapter 11 case is closed, dismissed or converted.

**10.5** ***Successors and Assigns and Binding Effect***

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, the Reorganized Debtors and all other parties in interest in the Chapter 11 Case.

**10.6** ***Compromises and Settlements***

From and after the Effective Date, the Reorganized Debtors may compromise and settle various Claims against them and/or Litigation Rights and other claims that they may have against other Persons without any further approval by the Bankruptcy Court.  Until the Effective Date, the Debtors expressly reserve the right to compromise

24

and settle Claims against them and Litigation Rights or other claims that they may have against other Persons, subject to the approval of the Bankruptcy Court if, and to the extent, required.

**10.7**     *Releases and Satisfaction of Subordination Rights*

All Claims against the Debtors and all rights and claims between or among the holders of Claims relating in any manner whatsoever to any claimed subordination rights shall be deemed satisfied by the distributions under, described in, contemplated by, and/or implemented in Article III of the Plan.  Distributions under, described in, contemplated by, and/or implemented by the Plan to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

**10.8**     *Releases by Debtors*

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors and any Person seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to Section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever (other than for fraud, willful misconduct, or gross negligence) in connection with or related to the Debtors, the Chapter 11 Case, or the Plan (other than the rights of the Debtors and the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Case, or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates, or the Reorganized Debtors against (i) any of the other Debtors and any of the Debtors' non-Debtor subsidiaries, (ii) any of the directors, officers, or employees of any of the Debtors or any of the Debtors' non-Debtor subsidiaries serving during the pendency of the Chapter 11 Case, (iii) any Professionals of the Debtors, (iv) each of the Negotiating Noteholders and their respective counsel and other advisors, (v) the Noteholders (other than the Negotiating Noteholders) solely in their capacities as Noteholders, (vi) the members (but not in their individual capacities) and Professionals of any creditors committee, (vii) the DIP Facility Agent; (viii) the DIP Facility Lenders; and (ix) the Indenture Trustee and its advisors; *provided, however*, that nothing in this Section 10.8 shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any employee (other than any director or officer) that is based upon an alleged breach of a confidentiality, noncompete or any other contractual or fiduciary obligation owed to the Debtors or the Reorganized Debtors.**

**10.9**     *Discharge of the Debtors*

(a)     Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims, upon the Effective Date, (i) the Debtors, and each of them, shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502 of the Bankruptcy Code, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (B) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan, and (ii) all Spectrum Interests shall be terminated.

(b)       As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Spectrum Interests, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

**10.10**   *Injunction*

**(a)       Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors or the Reorganized Debtors; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.**

**(b)       Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released pursuant to Sections 10.7, 10.8, or 10.11 of the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.**

**(c)       Without limiting the effect of the foregoing provisions of this Section 10.10 upon any Person, by accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 10.10.**

**10.11**   *Exculpation and Limitation of Liability*

**(a)       None of the Debtors, the Reorganized Debtors or their respective subsidiaries, any Negotiating Noteholder, the Creditors Committee, if any, the DIP Agent, the DIP Facility Lenders, the Indenture Trustee, or any of their respective present or former members, officers, directors, employees, advisors, Professionals, or agents, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

(b)      **Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective agents, employees, representatives, advisors, attorneys, or affiliates, and none of their respective successors or assigns shall have any right of action against any Debtor, any Reorganized Debtor, any of its subsidiaries, any of the Negotiating Noteholders, the Noteholders (other than the Negotiating Noteholders) solely in their capacities as Noteholders, the Creditors Committee, if any, the DIP Agent, the DIP Facility Lenders, or the Indenture Trustee or any of their respective present or former members, officers, directors, employees, advisors, Professionals and agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.**

### 10.12    *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### 10.13    *Modifications and Amendments*

The Debtors, subject to the consent of each of the Negotiating Noteholders, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, subject to the consent of each of the Negotiating Noteholders, which consent may not be unreasonably withheld, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 10.14    *Severability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of any Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.15    *Revocation, Withdrawal, or Non-Consummation*

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any Person, including any of the Negotiating Noteholder, in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person, including any of the Negotiating Noteholders.

**10.16** *Notices*

Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor or a Reorganized Debtor under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

**For the Debtors**:

SPECTRUM BRANDS, INC.
Six Concourse Parkway, Suite 3300
Atlanta, GA 30328
Attn:  John T. Wilson
Vice President, Secretary and General Counsel
Telephone: (770) 829-6200
Fax:  (770) 829-6295

with copies to:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036-6522
Attn:  D. J. Baker, Esq.
Telephone: (212) 735-3000
Fax:   (212) 735-2000

**For the Negotiating Noteholders**:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attn:  Brian Hermann, Esq.
Telephone:  (212) 373-3545
Fax:  (212) 492-0545

BRACEWELL & GIULIANI LLP
1177 Avenue of the Americas, 19th Floor
New York, New York  10036-2714
Attn:  Mark Joachim
Telephone:  (212)  508-6100
Fax:    (212) 508 6101

O'MELVENY & MYERS LLP
Seven Times Square
New York, New York  10036-6522
Attn:  Gerald Bender
Telephone:  (212) 326-2059
Fax:   (212) 326-2061

**10.17**    *Computation of Time*

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

Dated: February 3, 2009

**Spectrum Jungle Labs Corporation**
**Spectrum Brands, Inc.**
**ROVCAL, Inc.**
**ROV Holding, Inc.**
**Tetra Holding (US), Inc.**
**United Industries Corporation**
**Schultz Company**
**Spectrum Neptune US Holdco Corporation**
**United Pet Group, Inc.**
**DB Online, LLC**
**Aquaria, Inc.**
**Perfecto Manufacturing, Inc.**
**Aquarium Systems, Inc.**
**Southern California Foam, Inc.**

By:  */s/ Kent J. Hussey*
     Kent J. Hussey
     Chief Executive Officer
     Spectrum Brands, Inc.

William B. Kingman (Texas Bar No. 11476200)
LAW OFFICES OF WILLIAM B. KINGMAN, P.C.
4040 Broadway, Suite 450
San Antonio, Texas  78209
Telephone: 210-829-1199
Email: bkingman@kingmanlaw.com

Harry A. Perrin (Texas Bar No. 15796800)
D. Bobbitt Noel, Jr. (Texas Bar No. 15056500)
VINSON & ELKINS LLP
First City Tower, 1001 Fannin Street, Suite 2500
Houston, Texas  77002
Telephone: 713-758-2222; Fax: 713-615-5016
Email: hperrin@velaw.com, bnoel@velaw.com

D. J. Baker (Texas Bar No. 01566500)
Adam S. Ravin
Miriam H. Marton
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036-6522
Telephone: 212-735-3000; Fax: 212-735-2000
Email: dj.baker@skadden.com, adam.ravin@skadden.com,
miriam.marton@skadden.com

Proposed Counsel for Debtors and Debtors in Possession

**EXHIBIT A**

**TO**

**JOINT PLAN OF REORGANIZATION OF**

**SPECTRUM JUNGLE LABS CORPORATION, ET AL., DEBTORS**

**Summary Description of the New Notes**

*The following is a summary of certain terms of the New Notes and is qualified in its entirety by the more detailed information contained in the New Indenture.*

| | |
|---|---|
| Issuer ................................................................ | Reorganized Spectrum |
| New Notes ......................................................... | The original principal amount of New Notes will be equal to 20% of the Allowed Noteholder Claims, plus any increased principal amount of New Notes that may be issued in satisfaction of interest payment obligations as described below. |
| Maturity Date.................................................... | [10] years from the date of original issuance of the New Notes. |
| Interest .............................................................. | Interest will be paid at a rate of 12% per year with interest to be paid semi-annually in arrears, at Reorganized Spectrum's option, to pay (i) entirely by increasing the principal amount of the New Notes or (ii) entirely in cash. |
| Mandatory Prepayment..................................... | Notwithstanding anything to the contrary that will be contained in the indenture governing the New Notes, if, at the end of any accrual period (as defined in Section 1272(a)(5) of the Internal Revenue Code of 1986, as amended, or any successor statute thereto (the "**Code**")) ending after the fifth anniversary of the issuance of the New Notes, (x) the aggregate amount of accrued and unpaid original issue discount (as defined in Section 1273(a)(1) of the Code) on the New Notes would, but for this paragraph, exceed (y) an amount equal to the product of (A) the issue price (as defined in Sections 1273(b) and 1274(a) of the Code) of the New Notes multiplied by (B) the yield to maturity (interpreted in accordance with Section 163(i) of the Code) of the New Notes, Reorganized Spectrum will prepay at the end of each such accrual period without premium or penalty the minimum amount of principal plus accrued interest on the New Notes necessary to prevent any of the accrued and unpaid interest and original issue discount on the New Notes from being disallowed or deferred as a deduction under Section 163(e)(5) of the Code to Reorganized Spectrum. |
| Guarantees ........................................................ | Obligations under the New Notes will be guaranteed on |

|  | a senior subordinated basis by all of Reorganized Spectrum's United States' subsidiaries (such subsidiaries being the "**Guarantors**").  Newly created or acquired United States' subsidiaries of Reorganized Spectrum will be required to become Guarantors. |
|---|---|
| Ranking .......................................................... | The New Notes will be subordinate to existing and future senior debt of Reorganized Spectrum, including the Credit Agreement dated as of March 30, 2007, by and among Reorganized Spectrum, Goldman Sachs Credit Partners L.P., and others and the Exit Facility. |
| Redemption...................................................... | [Reorganized Spectrum may not redeem the New Notes before the date that is three years after issuance of the New Notes.  The New Notes may be redeemed at a redemption premium of (a) 106% after three years from issuance (b) 103% after four years from issuance and (c) 100% after five years from issuance.  Reorganized Spectrum will not be required to redeem the New Notes.] |
| Change of Control .......................................... | In the event of a change of control of Reorganized Spectrum, Reorganized Spectrum will offer to repurchase the New Notes for cash equal to 101% of the aggregate principal amount of the New Notes repurchased. |
| Indebtedness .................................................. | Reorganized Spectrum and its restricted subsidiaries will be subject to certain restrictions on the incurrence of indebtedness and the issuance of preferred stock. |
|  | Reorganized Spectrum will not be permitted incur any indebtedness that is subordinate or junior in right of payment to any senior debt of Reorganized Spectrum unless it is pari passu or subordinate in right of payment to the New Notes to the same extent.  No Guarantor will be permitted to incur any indebtedness that is subordinate or junior in right of payment to the senior debt of such Guarantor unless it is pari passu or subordinate in right of payment to such Guarantor's New Note guarantee to the same extent. |
| Liens .............................................................. | The New Notes will be issued as unsecured obligations of Reorganized Spectrum.  Reorganized Spectrum may not incur liens securing indebtedness, other than certain permitted liens including liens (a) in favor of Reorganized Spectrum, (b) existing on the property of an entity at the time such entity is merged or consolidated with Reorganized Spectrum, (c) existing on property at the time it is acquired by Reorganized Spectrum, (d) existing at issuance of the New Notes, (e) securing permitted refinancing indebtedness, (f) incurred in the ordinary course of business and not exceeding $25.0 million outstanding at one time and (g) securing indebtedness of a foreign subsidiary of Reorganized Spectrum, unless all payments due under the New |

|  | Indenture and the New Notes are secured on an equal and ratable basis with the obligations so secured until such time as such obligations are no longer secured by a lien. |
|---|---|
| Covenants ....................................................................... | In addition to the above described provisions on interest payments, redemption, prepayment, change of control, indebtedness and liens, the New Notes will be subject to certain other covenants including (a) requiring Reorganized Spectrum to make certain reports to holders of the New Notes, (b) restricting certain payments and dividends; (c) restrictions on entering into burdensome agreements, (d) restrictions on certain mergers, consolidations or sales of assets; and (d) restrictions on affiliate transactions. |
| Events of Default ........................................................... | The New Indenture will contain events of default, including (a) default for more than thirty (30) days in paying interest due, (b) default in paying principal due, (c) failure to comply with covenants restricting change of control, asset sale and merger, (d) failure to comply, upon due notice, with other covenants in the New Indenture, (e) cross-default for defaults on material indebtedness, (f) failure to pay final judgments in excess of $25.0 million, (g) if any note guarantee is held in any judicial proceeding to be unenforceable or invalid and (h) certain events of bankruptcy or insolvency. |
| Registration ................................................................... | The New Notes are being issued in reliance on the exemption from registration provided by Section 1145(a)(1) of the Bankruptcy Code and will not be registered with the Commission. |
|  | Upon Reorganized Spectrum's emergence from Chapter 11, Reorganized Spectrum and certain holders of its New Common Stock and holders of the New Notes will enter into the Stockholders' Agreement, which will, among other things,  provide for registration rights with respect to the New Notes.  It is expected that a shelf registration statement with respect to the equity and Notes will become effective [concurrently with Reorganized Spectrum's emergence from Chapter 11]. |

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

767359-New York Server 4A - MSW